Alexander Scheftel v. Commissioner.
Scheftel v. Commissioner
Docket No. 25818.
United States Tax Court
1951 Tax Ct. Memo LEXIS 17; 10 T.C.M. (CCH) 1176; T.C.M. (RIA) 51350; December 17, 1951
*17 1. For the taxable year 1945 petitioner and his corporate employer agreed that in addition to petitioner's regular salary the employer would reimburse him for certain traveling, sales promotion and entertainment expenses which he was to incur on behalf of his employer and would pay him additional compensation so that his wife could accompany him. Petitioner traveled extensively and engaged in promoting sales and entertaining customers. Besides his regular salary petitioner received an additional $19,000 from his employer. Held, that since the amount of the reimbursable expenses has not been proven and the amount of the additional compensation is unknown, a reasonable estimate of such expenses is $13,200, for which petitioner was fully reimbursed, and the remainder of the $19,000 paid, or $5,800, constitutes additional compensation. 2. On the basis of the facts presented, held, petitioner is not entitled to deductions claimed for (1) charitable contributions, (2) interest paid, and (3) state income tax and excise taxes paid. 3. On the basis of the facts presented, held, petitioner is not entitled to surtax exemption credits for his mother-in-law and father-in-law, claimed by him *18 as dependents. Richard W. Wilson, Esq., 74 Trinity Pl., New York 6, N.Y., for the petitioner. Thomas R. Charshee, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion The respondent determined a deficiency in the amount of $21,314.88 in petitioner's income tax liability for the taxable year ending December 31, 1945. The following questions are presented: (1) With respect to the expenses which the petitioner allegedly incurred on behalf of his employer, totaling $25,800, did the respondent err (a) in denying the petitioner's right to a claimed deduction for that portion of such traveling, entertainment and other business expenses in the amount of $6,800 which the petitioner claimed he paid with his own funds and for which he claimed he was not reimbursed by his employer, *19 and (b) in adding to petitioner's net income the total of certain deposits ($19,000), which were made available to petitioner by petitioner's corporate employer in a special account and which petitioner claimed were corporate funds used by him to meet the cost of the remainder of the traveling, entertainment and other business expenses? (2) Did the respondent err in denying the petitioner's claimed deductions for (a) charitable contributions made, (b) interest payments on personal loans, and (c) state income and other excise taxes paid? (3) Did the respondent err in denying to petitioner surtax exemption credits for petitioner's mother-in-law and father-in-law claimed by him as dependents? Findings of Fact The petitioner resides at 65 West 54th Street, New York City, New York. His income tax return for the calendar year 1945 was filed with the collector of internal revenue for the third district of New York. This return was filed on the cash basis. In the year 1945 petitioner owned one-third of the stock of the One-Two-Three Company, Inc. He was employed by this company and two affiliates, the One-Two-Three Company, Inc., of California and the Right Way Extract Company, Inc. *20 , of New York, as head of sales and advertising. The three companies were engaged in the manufacture and sale of certain food extracts. Their products included a certain lemon concentrate and extract for use in the preparation of lemon juice. This product was adaptable for use in the preparation of certain mixed alcoholic beverages. There was, therefore, a market for it among operators of clubs, restaurants and bars where such mixed drinks were served. In 1945 the enterprise had a sales force of about 60 salesmen located in various large cities throughout the United States. These salesmen established accounts with various bars, restaurants and clubs located in their respective areas. Sales were also made through independent distributors who were located in various cities throughout the United States and with whom the One-Two-Three Company, Inc., and its affiliates had contracted. The petitioner directed these selling operations. In this capacity he traveled extensively throughout the year 1945. One of the main purposes of his trips apparently was to check the progress of sales and to foster and solidify business relations with both distributors and other customers with whom the sales *21 force had recently opened new accounts. The usual procedure employed by the petitioner on reaching a city was to contact a local representative of the firm and together they made visits to various bars, clubs and restaurants where the companies had new accounts. It was petitioner's practice to purchase from customers a drink which required the use of One-Two-Three Company, Inc.'s product, in order to determine whether the product was being properly used. In a day's time petitioner would make about eight or ten such visits. In the various cities visited petitioner also entertained local distributors newly acquired as customers. Petitioner followed the same procedure with respect to local customers in and about New York City. On most, if not all, of the business trips made by the petitioner in 1945, he was accompanied by his wife, who was not employed in any capacity by any of the companies. In March 1945 the One-Two-Three Company, Inc., opened a joint checking account with the National City Bank of New York in New York City in the name of the petitioner and another party, Paul Lowengardt. The company made an initial deposit of $3,000, and approximately two weeks later it made an *22 additional deposit of $2,000. Thereafter it usually deposited $1,000 at a time and these deposits were made at irregular intervals. As of December 19, 1945, it had made deposits in this account totaling $19,000. Although the account was joint, all of the deposits were made for petitioner's exclusive use and benefit and, as per the bank statement on December 19, 1945, the petitioner had drawn checks on the account totaling $18,355. On his 1945 income tax return petitioner reported the following gross income, consisting of salaries, received from the three companies: One-Two-Three Company, Inc., of New
York
$30,000.00
One-Two-Three Company, Inc., of Cali-
fornia
10,000.00
Right Way Extract Company, Inc.
1,120.39
Total
$41,120.39
The reported gross income does not include any part of the $19,000 deposited in the checking account with the National City Bank of New York. On his income tax return for 1945 petitioner claimed the following deductions: Traveling and entertaining
$6,800.00
Contributions
950.00
Interest
120.00
State income tax and other sales and
excise taxes
1,298.05
Total
$9,168.05
Petitioner also claimed surtax exemption *23 credits for his mother-in-law and father-in-law, who were listed on the return as his dependents. In determining the deficiency against the petitioner for the year 1945, the respondent made the following adjustments: (1) he disallowed all of the deductions claimed by the petitioner in the amount of $9,168.05; (2) he disallowed the surtax exemption credits for the petitioner's mother-in-law and father-in-law claimed by petitioner as dependents; and (3) he added to petitioner's net income the amount of $19,000 which was deposited in the checking account with the National City Bank of New York. The deposits made by the One-Two-Three Company, Inc., in the checking account with the National City Bank of New York in the amount of $19,000 were in part reimbursement for traveling, entertainment and promotion expenses incurred by the petitioner on behalf of the corporation and in part additional compensation. The deposits were made in accordance with an arrangement between the petitioner and the corporation whereby the petitioner was to be reimbursed for business expenses he incurred in promoting the sales of the company's products, entertaining customers, and traveling away from home and, *24 in consideration of petitioner's agreement to travel extensively, the corporation further agreed to pay him additional compensation towards defraying the expenses incurred by him as the result of taking his wife with him on business trips. A reasonable estimate of the total traveling, promotion and entertainment expenses incurred by the petitioner during the year 1945 is $13,200, allocated among the various expenses as follows: Entertainment ( $350 per month)
$ 4,200
Sales promotion ( $200 per month)
2,400
Travel (hotels, meals, train fares, taxis,
etc.)
6,600
Total
$13,200
Since, in accordance with the agreement, petitioner's employer paid over to him $19,000 in addition to his regular salary and the reasonable amount of traveling, entertainment and other expenses was only $13,200, the remainder paid, $5,800, constitutes an addition to petitioner's income. Opinion HILL, Judge: The first issue concerns the question whether the respondent erred in making the following two adjustments: (1) disallowance of the deduction in the amount of $6,800 claimed by the petitioner for traveling and entertainment expenses for which he claimed he was not reimbursed, *25 and (2) the addition to petitioner's net income of $19,000, the total amount of deposits in petitioner's checking account by his corporate employer, the One-Two-Three Company, Inc. Petitioner contends that during the year 1945 he incurred on behalf of his employer various traveling, sales promotion and entertainment expenses in the amount of $25,800. It is his position that the deposits by the One-Two-Three Company, Inc. totaling $19,000, in the checking account which he held jointly with Paul Lowengardt (who was probably the same "Mr. Lowengardt" who the petitioner testified was a one-third owner of the stock of the One-Two-Three Company, Inc.) constituted funds of that corporation, all of which were employed by him in meeting part of such traveling and entertainment and sales promotion expenses, and that he employed his own funds in meeting the cost of the remainder ($6,800) of such expenses, for which he was not reimbursed. On brief, the respondent admits that some such expenses were incurred by the petitioner. On the basis of the meager evidence presented by the petitioner, consisting largely of his own oral testimony, we have found that the petitioner, a one-third stockholder *26 of the One-Two-Three Company, Inc., and head of its sales department, traveled extensively throughout the United States, visiting many large cities where he engaged in sales promotion and in contacting newly acquired customers. Petitioner testified that he entertained extensively. That the product being sold was new, that the company was young, and that the market for the product consisted largely of places of entertainment are facts which support the petitioner's testimony that it was necessary to entertain new customers. With respect to the amount of all the reimbursable expenses, while it is not abund-antly clear, it appears that the petitioner and the One-Two-Three Company, Inc., entered into a sort of general agreement whereby the petitioner was to be reimbursed for all such expenses incurred in traveling, promoting sales and entertaining customers. It also appears that as part of the same general agreement the petitioner required, as a condition to his agreeing to travel, that an additional amount should be made available to defray the costs of his wife's traveling expenses. Of course, any amount made available for this purpose would be additional compensation since she was *27 not employed by the company in any capacity and such expenses were personal to the petitioner. The agreement appears to have been carried out by means of the deposits made by the company in the checking account with the National City Bank of New York in the total amount of $19,000. While the account in which the deposits were made was a joint account in the names of petitioner and Lowengardt, that fact appears to be of no consequence with respect to the issue presented, since the petitioner admitted by his testimony that the $19,000 deposited was made available to and used only by himself. The evidence does not establish what part of the $19,000 was reimbursement for expenses and what part was additional compensation. Further, the petitioner has failed to prove that these expenses for the year totaled $25,800 as claimed. In the light of the evidence presented, it appears that the amount of these expenses was considerably less, and we believe that a reasonable estimate thereof is $13,200. Cf. ; Mills Estate, Inc., 17 T.C. - (Nov. 30, 1951); ; . Accordingly, *28 of the $19,000 deposited in the petitioner's checking account, $13,200 constituted reimbursement in full for the expenses incurred. The remaining amount of $5,800 appears to have been an amount paid to petitioner in excess of the total of his fixed salary and the business expenses incurred by him on behalf of his employer and constitutes additional compensation. Cf. Accordingly, we hold that petitioner is not entitled to a deduction for the claimed amount of $6,800 for non-reimbursed expenses incurred, and that the respondent erred in adding to petitioner's net income the full amount of $19,000, since only $5,800 of this sum represents an addition to income. The second issue concerns the question whether the respondent erred in denying the petitioner the following claimed deductions: (1) charitable contributions in the amount of $950; (2) payment of interest in the amount of $120; and (3) payment of New York State income tax and other sales and excise taxes in the amount of $1,298.05. The burden of proving he is entitled to such deductions rests upon the petitioner. [1] The only evidence presented by the petitioner to substantiate his claim to such *29 deductions was his own oral testimony, and this testimony itself was indefinite and uncertain. We will consider each deduction in order. First, with respect to the charitable contributions, the only evidence in support of the petitioner's claimed deduction is the following testimony given by him at the hearing: "Direct Examination: "Q. Well, now, let's take them in order. First, as to the church. Did your contributions amount to as much as $250 to your church in 1945? "A. Yes, I believe it did. At least $5 a week. "Q. Now, as to the larger of the organizations, that is, constructive drives such as the Red Cross, and tuberculosis and infantile paralysis, what can you tell us as to contributions to those in 1945? "A. Well, any time the Red Cross sent for an appeal, I sent them $25 here, and I duplicated that maybe five times in various sections of the country for their local Red Cross Chapter drives. "Q. Were you called upon in these various cities to which you went for business purposes - were you called upon to make contributions to the local - "A. Yes, many times. "Q. Did you make such *30 contributions? "A. I did. "Q. Do you have a present recollection as to the approximate total of these contributions made outside of New York? "A. Well, they used to run - I would judge they used to run from $50 to $75 a month. "Q. And were similar contributions made to those organizations here in New York City? "A. Well, most of the organizations here in New York City were - these various United Jewish Appeals would write a letter to the office and ask for a personal donation. You might send them $25 or $50. I believe one time I sent them $100, but I am just approximating. Then you get your Red Cross, and Catholic Big Brothers, and once you give a charitable donation, you are on everyone's list and you do as much as you can. "Q. What would you say your total contributions to all organizations amounted to in 1945, approximately "A. Well, I would judge it to be at least $75 a month, about $900 a year. "Q. That would cover all contributions? "A. I believe so. "Cross Examination: "Q. Now, with regard to the contributions, did you make any of those by check? "A. At times, yes. "Q. Have you got your cancelled checks? "A. Well, I wouldn't know. I haven't looked *31 for them." This evidence is insufficient to sustain petitioner's burden of proof, and we so hold. With respect to the claimed deduction for interest payments made by petitioner, the only evidence consisted of his following testimony: "Direct Examination: "Q. Mr. Scheftel, did you have any outstanding loans in 1945? "A. Yes, sir, I did. "Q. What were those? "A. Well, I borrowed $3,500 from the Underwriters Trust Company of New York, personal loan. "Q. Do you recall when that loan was made, in what year? "A. I can't exactly say, because I had two loans with them, and I believe one was around 1944; and the other in 1945, and it ran into 1946, I believe. "Q. Well, now, as to the loan in 1945, was that, or a part of it, outstanding in 1945? "A. Yes, I believe it was. "Q. And the second one, you say you made the loan in 1945? "A. Well, I wouldn't want you to hold me, I would have to consult the records to find out, but I was making payments in that year. "Q. How were those payments made? "A. Monthly. "Q. You paid monthly amounts in cash? "A. No, usually by check. Sometimes I believe I did make cash installments, payments, because I lived right in the building *32 that houses the bank. "Q. Did you receive statements from the bank each month on the loan account? "A. No. You have a little book with little coupons, and every month when it is due, you are supposed to send that coupon in with your payment. "Q. Do you know what rate of interest you were paying on that loan? "A. Well, I believe it was the regular bank interest on personal loans, somewhere between four and a half and six per cent. "Q. In your return you claimed a deduction of $120 for interest paid in 1945. Was that on that bank loan? "A. I believe so, yes. * * *
"Q. And for 1945 you computed that interest at $120? "A. Well, I just believe that the reason I did it - it probably was a two-year loan, and 24 times $175 would be just about $3,500, wouldn't it? "Q. I don't know. "A. Well, I mean it is thereabouts, and I think it was a 24-month loan, and I must have paid $240 in interest for the two years, so I deducted $120 for one year, and $120 for the other. "Cross Examination: "Q. Very well. Now with regard to the interest, how did you pay that interest, in cash or by check? "A. Most of the time the payments were made through my personal account, which *33 I had there. There were withdrawals that the bank was allowed to make from my balance on the due date. "Q. Did you get any receipt of any kind that you paid any interest? "A. You mean on the interest item alone? "Q. That is right. "A. I don't recall. "Q. You don't recall that you got any receipt on the interest? "A. I never paid any attention to it." This testimony is also insufficient to prove that petitioner is entitled to the deduction claimed for interest payments, and we so hold. The other deduction claimed by the petitioner was for income tax paid to the State of New York, as well as other excise taxes paid. Here, again, the only evidence was the petitioner's oral testimony: "Q. Now, with respect to income tax paid to the State of New York, do you recall what you paid in 1945? "A. I believe that that particular year - I think it was somewhere around eleven or twelve hundred dollars. Perhaps a little more. "Q. That is the best of your present recollection? "A. Correct, sir. Excuse me. If I recall, there was about - I paid city sales tax of about $35, or something, for that year." This testimony is insufficient to meet petitioner's burden of proof with *34 respect to the claimed deduction, and we so hold. The third issue presented concerns the question whether respondent erred in denying petitioner surtax exemption credits for his mother-in-law and father-in-law claimed by him as dependents. [2] Petitioner testified that he contributed approximately $100 per month to the support of his mother-in-law and father-in-law during the year 1945 and that he paid some medical expenses and purchased clothes for them during this period. He further testified that neither of the two received any income during that year, that they lived in New York City and that petitioner's brothers-in-law and sisters-in-law contributed about $35 a month to the support of mother-in-law and father-in-law. Petitioner's evidence fails to establish the fact that petitioner contributed over one-half the support of his mother-in-law and father-in-law, since it does not establish as a fact that there was no other support furnished the alleged dependents other than that furnished by the petitioner and his brothers-in-law and sisters-in-law. Accordingly, for insufficiency of proof, we hold respondent did not err in denying petitioner surtax exemption credits for his mother-in-law *35 and father-in-law who were claimed by him as dependents. *36 Decision will be entered under Rule 50. Footnotes
1. Rule 32 of the Rules of Practice of the Tax Court of the United States.↩
2. SEC. 25. CREDITS OF INDIVIDUAL AGAINST NET INCOME. * * *
(b) Credits for Surtax Only. - (1) Credits. - There shall be allowed for the purposes of the surtax, but not for the normal tax, the following credits against net income: * * *
(C) A surtax exemption of $500 for each dependent whose gross income for the calendar year in which the taxable year of the taxpayer begins is less than $500, except that if such dependent is married the exemption in respect of such dependent shall not be allowed if such dependent has made a joint return with the other spouse under section 51 for a taxable year beginning in such calendar year. (2) Determination of status. - The determination of whether an individual is married shall be made as of the last day of the taxable year, unless his spouse dies during the taxable year, in which case such determination shall be made as of the date of his spouse's death. (3) Definition of Dependent. - As used in this chapter the term "dependent" means any of the following persons over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer; * * *
(H) a son-in-law, daughter-in-law, father-in-law, mother-in-law, brother-in-law, or sister-in-law of the taxpayer. * * * The term "dependent" does not include any individual who is a citizen or subject of a foreign country unless such individual is a resident of the United States or of a country contiguous to the United States. * * *↩